IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

TRACY JONES, )
 )
    Plaintiff, )
 )
 ) CIV-14-1072-M
v. )
 )
CAROLYN W. COLVIN, )
  Acting Commissioner of Social )
   Security Administration, )
 )
    Defendant. )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(I), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings.

I. Administrative History

Plaintiff filed her application for disability benefits on January 27, 2011 (protective filing date), and alleged that she became disabled on June 21, 2010, due to a back injury with disc and nerve damage, two previous left knee operations with foot pain, neck fusion, major

1

depressive disorder, and type II diabetes mellitus. (TR 132, 143, 147). Plaintiff has a high school equivalency education and previous work as a hospital cleaner and nurse's aide. (TR 62, 148).

The record shows that Plaintiff sought treatment at a mental health clinic for depression in July 2008, February 2009, and again in November 2010. (TR 427, 432, 445). In March 2009, a psychiatrist at the clinic noted Plaintiff was stable on medications. (TR 414). By September 2009, Plaintiff reported her depression had improved, and the treating physician noted she exhibited a "[e]uthymic" affect. (TR 399). A treating psychiatrist noted in January 2010 that Plaintiff was "[s]table psychiatrically" on anti-depressant and anti-anxiety medications. (TR 390). A psychiatrist at the treating clinic again noted Plaintiff was stable on medications in April 2010. (TR 384).

In July 2010, Plaintiff reported to her treating psychiatrist that she had injured her back the previous month. She was prescribed an additional medication to treat insomnia. (TR 378). Plaintiff was again noted to be stable on medications in September 2010. (TR 369). Her medications were adjusted in January 2011. (TR 360).

Plaintiff advised a consultative physician that she had been diagnosed with type II diabetes mellitus in 1999 and that she began insulin injections for the condition in 2010. (TR 455).

Plaintiff sought treatment for a work-related back injury in July 2010. (TR 335). Her treating physician, Dr. Parkinson, prescribed anti-inflammatory and muscle relaxant medications and physical therapy. (TR 334). In August 2010, Dr. Parkinson prescribed

2

steroid and narcotic pain medications for a possible ruptured disc. (TR 337). Plaintiff underwent MRI testing of her lumbar spine in August 2010. The test showed degenerative disc disease and spondylosis. (TR 321-322). Plaintiff underwent a lumbar epidural steroid injection in September 2010. (TR 326). This treatment did not relieve her back and radiating right leg pain symptoms. (TR 339).

In October 2010, Plaintiff underwent a decompression and excision of extruded disc herniation at one level in her lumbar spine performed by Dr. Parkinson. (TR 329). In November 2010, Plaintiff underwent a selective nerve root block at the same level for continuing pain. (TR 332). Dr Parkinson noted in December 2010 that an EMG nerve conduction study showed evidence of Plaintiff's right-sided radiculopathy. (TR 346). Dr. Parkinson recommended a two-level spinal fusion with a revision decompression and complete facetectomy on the right side. (TR 346). Dr. Parkinson found Plaintiff to be temporarily totally disabled between September 2010 and December 2010 for worker's compensation purposes. (TR 353-358). There are no further records of treatment of Plaintiff by Dr. Parkinson.

Plaintiff was examined by Dr. Engles in March 2011 in connection with her workers compensation claim. Dr. Engles noted that Plaintiff's "exam [was] most peculiar with a diffuse hyperpathia of the right leg combined with a diffuse tenderness of the right leg. This is certainly atypical for a spine problem at the lumbar level. It raises the possibility of a diabetic mononeuropathy or an injury to the sciatic nerve; however, there is no overt weakness." (TR 596).

3

Plaintiff underwent a consultative psychological evaluation conducted by Raymond Fuchs, Ph.D., in April 2011 (TR 450-453) and a consultative physical evaluation conducted by Dr. Brennan in May 2011. (TR 455-461). Dr. Fuchs' diagnostic impression was anxiety disorder not otherwise specified and dysthymic disorder with features of compulsivity and depressive nature, and avoidant social tendencies. (TR 453). Dr. Brennan's diagnostic impression was chronic lumbosacral myositis, probable degenerative disc disease of the lumbar spine with diabetes and depression by history and obesity. (TR 457).

Following these evaluations, Dr. Woodcock, a medical consultant for the agency, determined that Plaintiff would be capable of performing light work limited by only occasional stooping. (TR 462-469). A second agency medical consultant, Janice Smith, Ph.D., opined that Plaintiff's mental impairments had resulted in mild limitations in her ability to perform daily living activities, moderate limitations in maintaining social functioning, and moderate limitations in her ability to maintain concentration, persistence, or pace. (TR 484).

The record contains office notes of a pain management specialist, Dr. Carl, showing treatment of Plaintiff between September 2011 and February 2012 for chronic pain syndrome, lumbosacral spondylosis without myelopathy, and degeneration of lumbar or lumbosacral intervertebral disc. (TR 539-552). Dr. Carl prescribed non-narcotic pain medications, but Plaintiff stopped taking these medications, and Dr. Carl noted he had released Plaintiff from further treatment in February 2012. (TR 539-541).

Plaintiff reported to a consultative physician that she had previously undergone neck

fusions, but there are no medical records of such treatment. (TR 450).

Plaintiff appeared and testified at a hearing conducted in December 2012 before Administrative Law Judge Bentley ("ALJ"). (TR 33-65). A vocational expert ("VE") also testified at the hearing.

II. ALJ's Decision

In a decision entered January 16, 2013, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 21, 2010, her alleged disability onset date. (TR 16). Following the agency's well-established sequential evaluation procedure, the ALJ found at the second step that Plaintiff had severe impairments due to neck and back pain due to status post cervical fusion, right sided hemilaminectomy and L4-5 disc decompression and degenerative disc disease, diabetes type II, obesity, and major depressive disorder, moderate. (TR 16).

At step three, the ALJ found that Plaintiff's impairments did not meet or equal the requirements of a listed impairment, and Plaintiff was not presumptively disabled under the agency's Listing of Impairments. (TR 18).

At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work. As further limitations on this RFC, the ALJ found that Plaintiff could not "reach overhead with the upper right extremity. She [could] stand, walk, and /or sit six hours of an eight-hour workday but must have a sit/stand option (allowing for a temporary change of position) and cannot stoop, kneel, kneel [sic], crouch, crawl, or climb ladders or scaffolds. Due to psychological factors, she [was] limited to simple tasks with routine

5

supervision, occasional contact with co-workers and supervisors, and occasional work related contact with the general public." (TR 19-20).

Relying on the VE's testimony concerning the exertional requirements of Plaintiff's past work, the ALJ found that Plaintiff's RFC prevented her from performing her previous jobs. (TR 24). Reaching the fifth and final step of the analysis, the ALJ found that Plaintiff was capable of performing jobs available in the economy and was therefore not disabled within the meaning of the Social Security Act. Again relying on the VE's hearing testimony concerning the availability of jobs for an individual with Plaintiff's RFC for work, the ALJ identified the jobs of small products assembler I, hospital product assembler, and hand bander. (TR 25).

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. § 404.981; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

III. General Legal Standards Guiding Judicial Review

The Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be

based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

The Social Security Act authorizes payment of benefits to an individual with disabilities. 42 U.S.C. § 401 *et seq*. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord, 42 U.S.C. § 1382c(a)(3)(A); see 20 C.F.R. § 416.909 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than twelve months. Barnhart v. Walton, 535 U.S. 212 (2002).

IV. RFC with Sit/Stand Option

Plaintiff contends that the ALJ erred in determining her RFC for work because the RFC did not specify the frequency of Plaintiff's need to alternate sitting and standing. In response, the Commissioner contends that no error occurred in the ALJ's evaluation of the evidence and RFC determination and that substantial evidence supports the decision.

"[T]he burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient RFC . . . to perform work in the national economy, given her age, education, and work experience." Lax, 489 F.3d at 1080 (internal quotation marks and citation omitted). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a

7

function-by-function basis." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, *1. This RFC determination "must include a narrative discussion describing how the evidence supports each conclusion, . . . [and explain] any material inconsistencies or ambiguities in the evidence in the case record. . . . ." Id. at *7 (footnote omitted).

When a disability claimant is found to capable of performing sedentary or light work except that the person must alternate periods of sitting and standing, a VE should generally be consulted "to clarify the implications for the occupational base." SSR 83-12, 1983 WL 31253, at *4. In this case, the ALJ obtained vocational testimony, as recommended in the policy ruling, in order "to clarify the implications for the occupational base" for Plaintiff. The ALJ described to the VE a hypothetical individual who could perform light work with additional limitations including jobs "requir[ing] a sit/stand option. And what I mean by that is just a temporary change in positions from sitting to standing or vice versa." (TR 62-63).

In response to this hypothetical query, the VE testified that such an individual could perform three jobs available in the economy, a small products assembler I, a hospital product assembler, and a packaging job such as a hand bander although "on those packaging jobs" the VE "reduce[d] those numbers by 75 percent to accommodate the sit/stand" limitation. (TR 63).

The penultimate issue is whether the ALJ's RFC limitation for jobs with a sit/stand option allowing a "temporary change in positions" between sitting and standing is sufficiently specific. Defendant contends that the ALJ's sit/stand limitation included in the RFC finding is reasonably interpreted as a sit/stand "at-will" limitation. As Defendant

8

suggests, the Tenth Circuit has previously concluded in an unpublished decision that an RFC limitation is sufficiently specific when an ALJ includes an "at will" requirement to a sit/stand limitation. Jimison ex rel. Sims v. Colvin, 513 Fed. App'x. 789, 792 (10th Cir. 2013)(unpublished op.). The court stated in Jimison that "[t]he option to sit or stand at will permits the claimant to control the frequency at which she alternates positions. No greater specificity would be possible." Id.

However, outside of the "at will" context, "an ALJ must be specific as to the frequency of the individual's need to alternate sitting and standing." Id. See SSR 96–9p, 1996 WL 374185, at *5 ("The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing."). This specificity is particularly important in cases involving unskilled work because "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." SSR 83–12, 1983 WL 31253, at *4.

Both the administrative rulings and recent precedent in this circuit provide guidance in determining the sufficiency of the ALJ's RFC finding. In multiple decisions in this Court and other courts in this circuit, RFC findings that did not specify the frequency needed for changing between sitting and standing positions have been found to be insufficient.

In Newton v. Colvin, 2013 WL 6169298 (W.D.Okla. 2013)(Mitchell, M.J.)(unpublished op.), adopted, 2013 WL 6169298 (W.D.Okla. 2013)(Miles-LaGrange, Chief D.J.), United States Magistrate Judge Mitchell found that an ALJ's RFC finding of a need for "a sit/stand option" failed to define how often the claimant was able to sit without

standing or changing positions. Further, Judge Mitchell found that the VE's testimony could not provide substantial evidence to support the ALJ's decision where the decision and hypothetical question posed to the VE failed to include the "key facts" of the specific frequency of the claimant's need to alternate sitting and standing. Id. at *3. See also Marlow v. Colvin, 2015 WL 1509007 (W.D. Okla.)(Miles-LaGrange, Chief D.J.)(unpublished op.)(RFC finding for need to alternate sitting and standing without loss of productivity was too vague to support ALJ's step five determination).

In another unpublished decision in the District of Kansas, United States Magistrate Judge Reid found that an RFC limitation and hypothetical question limiting the claimant to light work allowing "alternating sitting and standing" was not sufficient and required a remand because "[t]he regulations and case law . . . make clear that the ALJ must be specific in setting forth the frequency of a claimant's need to alternate between sitting and standing." Fairbanks v. Astrue, 2007 WL 2176029, * 4 (D.Kan. 2007)(Reid, M.J.)(unpublished op.), adopted, 2007 WL 2176029 (D.Kan. 2007)(Belot, D.J.). See also Carrell v. Colvin, 2014 WL 4854693, *4)(E.D.Okla. 2014)(Shreder, M.J.)(unpublished op.)(recommending Commissioner's decision be reversed and remanded for further proceedings where ALJ simply stated claimant would need to be allowed "to alternately sit and stand throughout the day" and it was unclear whether claimant could perform the jobs found by the ALJ given the RFC limitation), adopted, 2014 WL 4854699 (E.D.Okla. 2014)(White, D.J.)(unpublished op.); Waltemire v. Colvin, 2014 WL 3809189 (D.Kan. 2014)(Crabtree, D.J.)(unpublished op.)(holding "ALJ erred when he merely asked VE whether a 'sit/stand option' - without any

specifics - would affect the jobs identified as available in the national and local economies" because "[w]ithout sufficient specificity about the frequency of the need to alternate between sitting and standing, the VE's answer does not constitute substantial evidence to support the ALJ's decision").

It is difficult to discern any difference between an ALJ's RFC finding that a claimant must be able to alternately sit and stand and the ALJ's RFC finding in this case that Plaintiff must be able to temporarily change positions. It is not clear that the ALJ's RFC finding constituted an "at will" requirement or that Plaintiff would be able to sit or stand "at will" in the performance of the unskilled jobs identified by the VE. Consequently, because the ALJ's RFC finding did not include sufficient specificity regarding the sit/stand option, the Commissioner's decision should be reversed and remanded for further administrative proceedings. In light of this recommendation, it is not necessary to address Plaintiff's remaining allegations of error.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter REVERSING the decision of the Commissioner to deny Plaintiff's application for benefits and REMANDING the case for further administrative proceedings. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before ___July 1st__, 2015, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656

(10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this \_\_\_\_11th\_\_\_\_ day of \_\_\_June_____, 2015.

*[signature]*

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE